**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:13-cv-154(WOB)**

**TIMOTHY RAY LITTLE**                                                    **PLAINTIFF**

**VS.**                  **MEMORANDUM OPINION AND ORDER**

**TERRY CARL, ET AL.**                                                  **DEFENDANTS**

This is a *pro se* action in which inmate, Timothy Ray Little, appears to claim that the Defendants (1) violated his due process by removing him from his "job" at the jail and moving him to a dorm with fewer privileges, (2) retaliated against him for submitting grievances by moving him to a dorm with fewer privileges, and (3) failed to protect him from assault by another inmate at the jail.

This matter is now before the Court on a motion for summary judgment filed by Sergeant[1] Landrum, Deputy Boyle, and Sergeant Bell (the "Defendants") (Doc. 16) and a motion to request items/evidence filed by Plaintiff (Doc. 19). The Court, having reviewed the pleadings and being sufficiently advised, hereby issues the following Memorandum Opinion and Order.

**Facts**

**A. Inmate Little's Confinement**

On June 6, 2012, Timothy Little ("Little") was booked into the Kenton County Detention Center ("KCDC") as a pretrial detainee and placed in a general population dormitory 106. Doc. 16-1, Bell Decl., ¶1. The opportunities for inmates to help deputies with uniform

---

[1] Plaintiff's Complaint misspelled Sergeant, therefore the caption is also misspelled.

exchanges is randomly afforded inmates in dorm 106. *Id*. at ¶2. Inmates who are asked to help deputies with uniform exchanges receive no tangible benefits or credits for helping. *Id*. at ¶3. There is no dispute that Little began helping with uniform exchanges, although the date he began assisting is unclear.

In January 2013, Deputy Boyle suspected Little was extorting food trays, commissary items and chores from dormmates in exchange for providing the correct uniform sizes during the uniform exchanges. Doc. 16-2, Boyle Decl., p. 1, ¶1-2. At some point in January, Deputy Boyle stopped asking Little to assist her with uniform exchanges during her shift. Doc. 1, Complaint; Doc. 16, Def. Motion and Memo, p. 2; *Id*. at ¶3.

**B. January 9, 2013 and January 11, 2013 Grievances**

On January 9, 2013, Little filed a grievance complaining that Deputy Boyle had a personal vendetta against him and harassed him. Doc. 16-3, 1/9/13 Grievance. The grievance was denied as being outside the scope of available remedies. *Id*. Sergeant Bell offered to move Little to an isolation cell on days when Deputy Boyle was assigned to dorm 106 to avoid any conflict that Little perceived existed between them, but Little declined this option. *Id*.

On January 11, 2013, Little filed another grievance, complaining that Deputy Boyle was telling inmates and staff that she hated him. Doc. 16-4, 1/11/13 Grievance. Sergeant Landrum denied the grievance on January 12, 2013, because it was not filled out correctly. *Id*. Sergeant Landrum advised Little he could resubmit a new grievance, but

cautioned that how Deputy Boyle performed her job was not a grievable matter. Doc. 16-5, Landrum Decl., ¶¶1-2.

Sergeant Landrum met with Little on January 16, 2013, to discuss the status of his grievance. *Id*. at 3. Little explained he was satisfied that the matter had been fairly settled and did not want to proceed with filing a revised grievance. *Id.*

Later that day, Little complained verbally to Sergeant Bell about Deputy Boyle after she did not ask him to assist with uniform exchanges and limited him to thirty seconds to exchange his own uniform. 16-2, Boyle Decl., ¶3; Doc. 16-1, p. 8, 1/16/13 Incident Report.

### C. Transfer to Dorm with Lesser Privileges

An investigation into uniform exchange assistance revealed that inmates Little and Beal were exchanging the correct uniform sizes for items and completed chores from dormmates. Doc. 16-6, 1/16/13 Incident Report.

With the approval of Lieutenant Sprang, Sergeant Bell made the decision to transfer Little to a dorm with lesser privileges ("Tango"). *Id.;* Doc. 16-1, Bell Decl., ¶4. Little's classification did not change after his transfer. *Id.*

### D. February 21, 2013 Grievance

On February 21, 2013, Little filed a grievance complaining that he was brought to Tango on the same day for the same reason as inmate Beal but was in Tango longer than Beal. Doc. 16-7, 2/21/13 Grievance. Little proposed that he be transferred to dorm 102, 106, or 152. *Id.* Sergeant Landrum denied the grievance as non-grievable. *Id.*

**E. Transfer to Dorm 152 & Altercation with Fellow Inmate**

On February 22, 2013, Little was transferred to dorm 152. Doc. 16-1, Sgt. Bell Decl., ¶5.

Little admits that on March 16, 2013, he and a fellow inmate engaged in a physical altercation over a card game. Doc. 16-8, 3/16/13 Incident Report and Witness Statements; *see* surveillance of altercation, Doc. 15. Both inmates were removed from dorm 152 following the incident. Little did not request medical treatment for any injuries allegedly suffered in the fight over the card game. Doc. 16-1, Bell Decl., ¶6.

## Analysis

**A. Due Process**

Summary judgment on Plaintiff's due process claim is appropriate. Whether an inmate has a liberty interest in avoiding a particular condition of confinement or cell placement is governed by *Sandin v. Conner,* 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations removed).

Little's transfer from dorm 106 to a different dorm with fewer privileges did not impose "atypical or significant hardship" on him

"in relation to the ordinary incidents of prison life." *See id*. The record establishes that Little's ability to assist with uniform exchanges was randomly afforded to him and other inmates of that dorm, and that he received no tangible benefit from assisting. Doc. 16-1, Bell Decl., p. 1, ¶¶1-3. Even if Little's suspected extortion was not substantiated as Plaintiff contends, the jail has discretion in making dorm assignments.

A holding that any deprivation of a privilege imposed by prison authorities triggers the protections of the Due Process Clause would subject a wide spectrum of discretionary actions that traditionally have been the business of detention facility administrators to judicial review. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976).

For these reasons, summary judgment for the Defendants on Little's due process claim is warranted.

### B. Retaliation

Summary judgment for the Defendants on Little's retaliation claim is also appropriate. To state a claim for retaliation, Little must establish that (1) he engaged in protected conduct; (2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (*citing Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

Little has failed to demonstrate a genuine issue of fact that he engaged in protected activity by complaining about how Deputy Boyle

chose to have inmates help with uniform exchange.  *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001) ("[W]hile a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."); *Ward v. Dyke,* 58 F.3d 271, 274 (6th Cir. 1995)) ("The ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management.")  Deputy Boyle's managerial decisions about who she chose to assist with uniform exchange is not a grievable dispute.  As such, Little's complaints do not constitute protected conduct.

The fact that Little disputes extorting items in exchange for correct uniform sizes does not alter the conclusion that Little's complaints were not protected.  Whether the allegation could be substantiated is irrelevant, because Deputy Boyle may rely upon her managerial discretion in how to conduct uniform exchanges during her shift.

Plaintiff also failed to raise a material issue of fact that he suffered an adverse action.  The Sixth Circuit recently recognized that cell assignments are incidental to detention and do not typically amount to an adverse action.  *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (recognizing the general rule but holding that the prisoner sufficiently pled that prison officials retaliated against him by forcing him into a cell with a mentally ill prisoner who ultimately threatened the prisoner's life).

For these reasons, summary judgment for the Defendants is appropriate on this claim.

**C. Failure to Protect**

Summary judgment for the Defendants is also appropriate on Little's failure to protect claim. "Pretrial detainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.Ed.2d 605 (1983), are analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (*citing Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985)).

To state a claim for failure to protect under the Eighth Amendment, the plaintiff must satisfy an objective component by alleging his medical need was "sufficiently serious." *Comstock v. McCrary*, 273 F.3d 693, 703 (*citing Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To satisfy the subjective component, the plaintiff must show the official being sued perceived facts from which to infer substantial risk to the prisoner, that the official did in fact draw the inference, and that the official then disregarded that risk. *Id*.

There is no evidence that any KCDC deputy possessed the requisite culpable state of mind when the decision was made to transfer Plaintiff to dorm 152, a cell assignment that the Plaintiff had requested. Doc. 16-7, 2/21/13 Grievance. The evidence also

conclusively establishes that the altercation with another inmate occurred abruptly over a card game, not either inmate's criminal histories. Doc. 16-8, 3/16/13 Incident Report and Witness Statements; Doc. 15, surveillance video.

Little is also unable to demonstrate that the Defendants failed to protect him by being deliberately indifferent to his medical needs. There is no evidence Little made a request for medical attention on or after the March 16, 2013 altercation. Little was taking prescribed medications for conditions unrelated to the fight and therefore had access to medical personnel at least twice daily during medical pass rounds. Doc. 16-1, Bell Decl., ¶7. Despite having these opportunities to request help, he did not do so. *Id.* at 6. Even if Little's claim that he told a nurse he felt unsafe could be substantiated by testimony or surveillance, Plaintiff never claims he told an officer of his concerns.

Because Little is unable demonstrate a genuine issue of material fact exists with respect to whether any defendant was aware of and ignored an obvious substantial risk of harm to him or serious medical need, summary judgment in favor of the Defendants is appropriate.

**D. Plaintiff's Motion to Request Items and Evidence**

Little's requests for additional evidence is futile. While Federal Rule of Civil Procedure 56(f) provides that the Court may postpone ruling on summary judgment to allow a party opposing summary judgment to conduct discovery, the opposing party must demonstrate how the discovery being requested will rebut the showing of the absence of a genuine issue of material fact. *See Emmons v. McLaughlin*, 874 F.2d

351, 356-57 (6th Cir. 1989). Plaintiff has failed to demonstrate how daily logs, video surveillance, or names of inmates at KCDC would further assist him with sufficiently establishing his claims of constitutional violations against the Defendants.

Therefore, the Court being sufficiently advised, **IT IS ORDERED**:

(1) Defendants' motion for summary judgment (Doc. 16) be, and hereby is, **GRANTED;** and

(2) Plaintiff's motion to request items/information (Doc. 19), be, and hereby is, **DENIED;**

(3) A Judgment will enter concurrently herewith.

This 15th day of July, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge